UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) No. 4:22CR00136 RLW |
| CORNELIUS M. GREEN, | ) |
| Defendant. | ) |

**GUILTY PLEA AGREEMENT**

Come now the parties and hereby agree, as follows:

**1. PARTIES:**

The parties are the defendant Cornelius M. Green, represented by defense counsel Nicholas Williams and William Marsh, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. However, the parties have been in communication with the Circuit Attorney's Office who have stated that if defendant is sentenced to life imprisonment on each count in the instant case, they will dismiss the charges against defendant in *State v. Cornelius Green*, Case No. 1622-CR04364.

The Court is neither a party to nor bound by this agreement. However, if the Court accepts the plea agreement as to the sentence or sentencing range, then the Court will be bound by said agreement pursuant to Rule 11(c)(1)(C).

1

## 2. GUILTY PLEA:

Pursuant to Rule 11(c)(1)(C), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Counts I and II of the charge, the Government agrees that no further federal prosecution will be brought in this District relative to the defendant's participation in a conspiracy to commit the murder for hire or the murder for hire of Jocelyn Peters and her unborn child, of which the Government is aware at this time.

In addition, pursuant to Rule 11(c)(1)(C), Federal Rules of Criminal Procedure, the parties agree that the defendant should be sentenced to life imprisonment on each count because it is the only sentence that satisfies the statutory aims of punishment set forth in 18 U.S.C. § 3553(a).

## 3. ELEMENTS:

As to Count I, the defendant admits to knowingly violating Title 18, United States Code, Section 1958 (conspiracy to commit murder for hire), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

(1) two or more persons reached an agreement or came to an understanding to travel in interstate commerce or use facilities of interstate commerce, including but not limited to United Parcel Service, credit cards and cellular telephones;

(2) the defendants voluntarily and intentionally joined in the agreement or understanding either at the time it was reached or at some later time while it was still in effect;

(3) at the time the defendants joined the agreement or understanding, they knew the purpose of the agreement or understanding; and

(4) while the agreement or understanding was in effect, the defendants or one or more other persons who had joined in the agreement knowingly traveled or caused another to travel in interstate commerce or used or caused another to use a facility of interstate commerce, including

but not limited to United Parcel Service, credit cards or cellular telephones, for the purpose of carrying out or carrying forward the agreement or understanding.

As to Count II, the defendant admits to knowingly violating Title 18, United States Code, Section 1958 (murder-for-hire), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

(1) that a person at or about the time charged in the Indictment traveled or caused another to travel in interstate commerce or used or caused another to use any facility of interstate commerce;

(2) that the travel in interstate commerce or use of any interstate facility was done with the intent that a murder be committed in violation of the laws of the State of Missouri;

(3) that anything of pecuniary value was received or promised or agreed to be paid as consideration for the murder; and

(4) the death of Jocelyn Peters or her unborn child resulted.

4. **FACTS:**

The parties agree that the facts in this case are as follows and that the government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

Jocelyn Peters was a resident of St. Louis City, Missouri and worked as a schoolteacher in the St. Louis City Public Schools. Defendant Cornelius M. Green was a resident of St. Louis City, Missouri and worked as a school principal in the St. Louis City Public Schools. Co-defendant Phillip J. Cutler was a residence of Oklahoma. Defendant Green and co-defendant Cutler had a longstanding and close friendship. Defendant Green was legally married to Steffanie Green and was involved in multiple romantic relationships with other women.

3

Jocelyn Peters and defendant Green were engaged in an ongoing personal and romantic relationship. In the time leading up to her death, Jocelyn Peters had recently turned 30 and was more than 27 weeks pregnant with defendant Green's child. Defendant Green devised a plan to murder Peters and her unborn child. All of the following conduct was done in furtherance of the conspiracy to commit murder for hire, and the murder for hire of Jocelyn Peters and her unborn child actually occurred.

Defendant Green stole cash from Carr Lane Middle School. Defendant Green offered and co-defendant Cutler accepted cash, to murder Jocelyn Peters and her unborn child. On or about February 29, 2016, defendant Green, using a cell phone in St. Louis, Missouri, sent a text message to co-defendant Cutler's cell phone in Oklahoma asking co-defendant Cutler to come to St. Louis the week of March 20, 2016. Co-defendant Cutler responded, "Ok, that will work, u gonna b sending the pacge?"

On March 7, 2016, defendant Green sent a United Parcel Service package containing $2,500 in U.S. Currency to co-defendant Cutler. Defendant Green used an address of 1004 N. Jefferson Ave. (Carr Lane Middle School) when sending the package. On March 8, 2016, in Oklahoma, co-defendant Cutler received the package sent by defendant Green, accepting the cash in exchange for his planned killing of Peters and her unborn child. On March 21, 2016, co-defendant Cutler traveled from Oklahoma to St. Louis and stayed at a residence occupied by defendant Green and his sister.

On March 22, 2016, defendant Green and co-defendant Cutler, traveling in defendant Green's 2013 white Kia Optima sedan, went to the Amtrak train station and defendant Green took an Amtrak train to Chicago, Illinois, leaving co-defendant Cutler with the Kia and a ring of keys containing the key to the Kia as well as keys necessary to access Jocelyn Peters' apartment.

4

Defendant Green traveled to the Chicago, Illinois area to establish an alibi for the murder of Jocelyn Peters and her unborn child, which he and co-defendant Cutler had planned co-defendant Cutler to commit while defendant Green was out of town.

On March 24, 2016, co-defendant Cutler traveled to the area of 4236 W. Pine in the City of St. Louis in defendant Green's Kia Optima, unlawfully entered Jocelyn Peters' apartment, Unit #201, found Peters in her bed, shot her with a .380 caliber firearm in her head, using a potato as a silencer to muffle the sound of the shot. Jocelyn Peters and her unborn child were killed as a result of co-defendant Cutler shooting Peters in the head. Co-defendant Cutler used his cell phone to call defendant Green's phone to report that the murders had in fact occurred.

Thereafter, on March 24, 2016, at approximately 6:40 a.m., defendant Green used a cell phone and a Visa credit card to purchase a return Amtrak train ticket from Chicago's Union Station to St. Louis so there would be verification that he was in Chicago at the time of the murder. Upon returning to St. Louis, defendant Green went directly to 4236 W. Pine and called 911 to report Jocelyn Peters was shot—falsely pretending that he had no knowledge of the circumstances leading to her death. Thereafter, he repeatedly made false statements to law enforcement and others attempting to evade responsibility for his ordering of the murders.

5. **STATUTORY PENALTIES:**

The defendant fully understands that the penalty provided by law for the crimes to which the defendant is pleading guilty is life imprisonment, a fine of not more than $250,000, or both such imprisonment and fine. The Court may also impose a period of supervised release of not more than 5 years.

6. **U.S. SENTENCING GUIDELINES (2023 MANUAL):** The parties' agreement to a sentence of life imprisonment on both counts is no way based on the Guidelines calculations or resulting

5

advisory range. However, in light of the statutory mandatory minimum of life imprisonment, the parties anticipate the Guideline range will be life imprisonment. Accordingly, the parties defer to the Court's specific Guidelines calculations, including the Total Offense Level and the defendant's Criminal History.

**7. WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:**

    **a. Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

        **(1) Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea.

        **(2) Sentencing Issues:** The parties agree to waive the right to appeal all sentencing issues.

    **b. Habeas Corpus:** The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

    **c. Right to Records:** The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 552, or the Privacy Act, Title 5, United States Code, Section 552a.

8. **OTHER**:

    a. **Disclosures Required by the United States Probation Office**: The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

    b. **Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies**: Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

    c. **Supervised Release**: Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed. These conditions will be restrictions on the defendant to which the defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished.

    d. **Mandatory Special Assessment**: Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $200, which the defendant agrees to pay at the time of sentencing. Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

    e. **Possibility of Detention**: The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

**f. Fines, Restitution and Costs of Incarceration and Supervision:** The Court may impose a fine, restitution (in addition to any penalty authorized by law), costs of incarceration and costs of supervision. The defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately. Pursuant to Title 18, United States Code, Section 3663A, an order of restitution is mandatory for all crimes listed in Section 3663A(c). Regardless of the Count of conviction, the amount of mandatory restitution imposed shall include all amounts allowed by Section 3663A(b) and the amount of loss agreed to by the parties, including all relevant conduct loss. The defendant agrees to provide full restitution to all victims of all charges in the indictment.

**g. Forfeiture:** The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The defendant agrees to abandon [his/her] interest in all seized items and further agrees that said items may be disposed of or destroyed by law enforcement officials in any manner without further notice. By abandoning these items, the defendant waives any future rights to receive additional notice, a valuation of the items, or the opportunity to submit a claim to contest the disposition or destruction of the items that may exist under any policies or procedures of the seizing agency(ies).

## 9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:

In pleading guilty, the defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses against the defendant beyond a

reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

The guilty plea could impact defendant's immigration status or result in deportation. In particular, if any crime to which defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed mandatory. Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the plea.

10. **VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:**

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

## 11. CONSEQUENCES OF POST-PLEA MISCONDUCT:

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any condition of release that results in revocation, violates any term of this guilty plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

12. **NO RIGHT TO WITHDRAW GUILTY PLEA:**

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring.

2-28-2024
Date

TIFFANY G. BECKER
Assistant United States Attorney

2/28/24
Date

CORNELIUS M. GREEN
Defendant

2/28/2024
Date

NICHOLAS WILLIAMS
WILLIAM MARSH
Attorneys for Defendant

11